**DEORCHIS & PARTNERS, LLP**
61 Broadway
26th Floor
New York, N.Y. 10006

Attorneys for Defendants
CSX INTERMODAL, INC. and
CSX TRANSPORTATION, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AXA INSURANCE SINGAPORE PTE LTD.,

                          Plaintiff,             **08 Civ. 3084 (DAB)**

    - against -

CSX INTERMODAL, INC.;
CSX TRANSPORTATION, INC.;
HAPAG LLOYD CONTAINER LINE GMBH,

                          Defendants.
-----------------------------------------------------------X

## ANSWER AND AFFIRMATIVE DEFENSES

      Defendants CSX Intermodal, Inc. (hereinafter "CSXI") and CSX Transportation,

Inc. (hereinafter "CSXT"), by and through undersigned counsel, for their Answer and

Affirmative Defenses to the Amended Complaint filed herein by AXA Insurance

Singapore Pte Ltd., allege as follows:

## FIRST CAUSE OF ACTION

      1.     Deny each and every allegation contained in paragraph 1, except admit

that this action arises from the intermodal carriage moving from a foreign country to the

United States and said carriage included rail carriage, as well as substantial intended

ocean carriage.

      2.     Deny any breaches of contract and torts by CSXI or CSXT as alleged in

paragraph 2, but admits plaintiff seeks recovery for cargo loss.

3.      Deny knowledge or information sufficient to form a belief as to the truth of paragraphs 3, 4, 6, 7, 11 and 15, and therefore Deny the same.

4.      Admit paragraph 5.

5.      Deny each and every allegation contained in paragraphs 8, 12 and 13.

6.      Deny each and every allegation contained in paragraph 9, except admit that CSXT received custody of container CPSU 1775206 at or near Charleston, South Carolina, for purposes of railroad transportation to Jacksonville, Florida.

7.      Deny each and every allegation contained in paragraph 10, except admit Schedule A is annexed to the Complaint.

8.      Deny each and every allegation contained in paragraph 14, except admit no part of plaintiff's claim has been paid.

## SECOND CAUSE OF ACTION

9.      Repeat and reallege each and every answer made to the allegations in paragraphs 1-15 as if fully set forth herein at length.

10.     Deny each and every allegation contained in paragraph 17, except admit with respect to the interstate rail carriage of the cargo, CSXT was at all material times engaged in the business of a rail carrier and providing of rail carrier services for compensation.

11.     Deny each and every allegation contained in paragraphs 18 and 20.

12.     As to the allegations contained in paragraph 19, Deny there was loss to the

container's contents; the shipment was not subject to the Carmack Amendment but some of the defenses asserted herein would be defenses under the Carmack Amendment if the Carmack Amendment were applicable.

### THIRD CAUSE OF ACTION

13.    Repeat and reallege each and every answer made to the allegations in paragraphs 1-15 as if fully set forth herein at length.

14.    Deny each and every allegation contained in paragraph 22.

### FOURTH CAUSE OF ACTION

15.    Repeat and reallege each and every answer made to the allegations in paragraphs 1-15 as if fully set forth herein at length.

16.    Deny each and every allegation contained in paragraphs 24 and 25.

### FIFTH CAUSE OF ACTION

17.    Repeat and reallege each and every answer made to the allegations in paragraphs 1-16 as if fully set forth herein at length.

18.    Deny each and every allegation contained in paragraph 27.

### FOR AFFIRMATIVE AND COMPLETE DEFENSES AS TO CSX INTERMODAL, INC.

19.    Repeat and reallege each and every answer made to the allegations in paragraphs 1-18 as if fully set forth herein at length.

20.    CSXI acts solely as a shipper's agent in arranging rail transportation of intermodal containers on behalf of its customers. CSXI is not a railroad, and provides therefore no rail transportation services, and therefore provided no rail transportation services for the shipment which is the subject matter of this lawsuit. CSXI was engaged

by the co-defendant Hapag Lloyd to arrange ramp-to-ramp rail transportation on their behalf as a shipper's agent of the container which is the subject matter of this lawsuit from Charleston, South Carolina to Florida East Coast's rail yard in Miami, Florida. CSXI, pursuant to its contract with Hapag Lloyd, provided the shipper agent services from its offices in Jacksonville, Florida. CSXI does not have an office for the transaction of business within the Southern District of New York, nor did the shipment which is the subject matter of this lawsuit ever arrive, nor was it ever transported in or through the Southern District of New York and/or the state of New York. The container at issue was delivered in the United States by Hapag Lloyd to the Port of Charleston, and thereafter was transported by Hapag Lloyd's agent to the CSX terminal in Charleston, and from there was transported by CSXT by rail from Charleston to Jacksonville, Florida, and thereafter by the Florida East Coast Railroad from Jacksonville, Florida to Miami, Florida. From there the shipment was picked up without exception, by a motor carrier, Maximus Transportation, Inc., engaged by Hapag Lloyd who provided the motor carrier delivery services from the Florida East Coast rail yard in Miami to the ultimate consignee's premises in Broward County, Florida.

21.    Pursuant to its contract with Hapag Lloyd, CSXI entered into a written contract for rail contract transportation pursuant to 49 USC § 10709, to be performed by CSXT pursuant to the terms of that contract. Under that contract CSXI and CSXT agreed that CSXT would only be liable for any loss or damage to a shipment that occurred on CSXT's lines as a result of a derailment. In CSXI's contract with Hapag Lloyd, the parties agreed that "to the extent the rail carrier's liability for the Shipment is defined or limited in its contract with CSXI, CSXI's liability to shipper shall be similarly defined or

4

limited." The container which is the subject matter of the lawsuit in this case was not involved in a derailment while on CSXT's lines, based upon the records of CSXT, nor has plaintiff alleged any such loss as a result of a derailment. On information and belief, a surveyor, Brian Mahoney, employed by plaintiff, examined the Hapag Lloyd container and found that someone at some point in time tampered with a rivet in the container's door locking mechanism in order to gain entry without breaking the seal. CSXI also entered into a separate written contract for the rail services performed by the Florida East Coast Railroad, which governs its liability while it is transporting the shipment solely on its lines.

Based upon the above stated facts, CSXI asserts the following defenses:

i.    Based upon Item 90 in CSXI's Service Directory No. 1, the contract between Hapag Lloyd and CSXI, CSXI's liability is limited to the limited liability undertaken by CSXT in its contract with CSXI, and therefore plaintiff may not recover unless CSXT lost or damaged the cargo in a derailment. Since that did not occur in this case, CSXI has no liability to plaintiff. See excerpt of Item 90 attached hereto as Exhibit A.

ii.    There is no federal court subject matter jurisdiction over CSXI because it is not a railroad, and therefore the Carmack Amendment does not apply to the services it provides.

iii.    There is no personal jurisdiction over CSXI as it did not provide any services for the subject shipment in the Southern District of New York, and it maintains no offices for the transaction of business within the Southern District of New York.

iv.    No timely written claim, pursuant to the terms of its contract, was filed

against CSXI by plaintiff.

v.      Any suit brought against it is time barred pursuant to the provisions of its Service Directory No. 1 which forms its contract with Hapag Lloyd.

vi.     Pursuant to Service Directory No. 1, no lawsuit may be instituted against CSXI without the parties attending a prior mediation of the issues in Jacksonville, Florida.

vii.    Pursuant to Service Directory No. 1, no notification was given to CSXI within 24 hours of delivery of the shipment that the shipment was delivered short, thereby enabling CSXI to send an investigator or inspector to determine the alleged cause of the loss, and therefore CSXI has no liability for the shipment that is the subject matter of this lawsuit.

viii.   The Southern District of New York is an inconvenient forum for the litigation which is the subject matter of this lawsuit, in that no services were provided by CSXI in the Southern District of New York, most services being provided either from Jacksonville, Florida or from Charleston, South Carolina, and therefore the action should be dismissed, as no witnesses and persons with knowledge concerning the shipment are in the Southern District of New York, as the shipment never entered the Southern District of New York.

ix.     Pursuant to a forum selection clause contained in the contract with Hapag Lloyd, Service Directory No. 1, lawsuits can only be instituted at the place of rail origin, Charleston, South Carolina, the place of rail destination, Miami, Florida or Jacksonville, Florida, and therefore this lawsuit may not be maintained in the Southern District of New York.

x.      If the shipment was subject to a limitation of liability contained in the

Hapag Lloyd intermodal bill of lading, which limits the liability of CSXI and/or CSXT,

then CSXI asserts all such limitations of liability, including, but not limited to, the one

year time to file suit and the mandatory $500 package limitation for the container, as well

as any other applicable defenses contained therein.

## FOR AFFIRMATIVE AND COMPLETE DEFENSES
## AS TO CSX TRANSPORTATION, INC.

22.     CSXT Repeat and reallege each and every allegation contained in

paragraph 19, to the extent they apply to CSXT, with the same force and effect as if fully

set forth herein at length.

23.     With respect to the container which is the subject matter of this lawsuit, as

enumerated in plaintiff's complaint, CSXT was hired pursuant to a written contract,

pursuant to 49 USC § 10709 between CSXI and CSXT to provide rail transportation

services for the container from Charleston, South Carolina to Jacksonville, Florida.

Pursuant to the terms of the contract, CSXT's sole responsibility for loss or damage

would be limited to loss or damage that occurred by reason of a derailment while CSXT

was transporting the shipment. Further, the contract does not make CSXT responsible for

any loss or damage that occurred either prior to its receiving the container, or after it

delivered the container in question to Florida East Coast at interchange in Jacksonville,

Florida without exception. Based upon the records of CSXT, CSXT is not responsible

for plaintiff's alleged shortage claim, due to the fact that its records show that the

container was transported over its lines safely and interchanged to Florida East Coast at

Jacksonville, Florida without exception, and no loss or damage occurred to the container

as a result of a derailment while on the lines of CSXT. A true copy of the contract between CSXI and CSXT is attached hereto as Exhibit B.

24.     Under the contract between CSXT and CSXI, CSXT is entitled to assert any defenses that are applicable to CSXI, and therefore CSXT duly incorporates all the affirmative defenses asserted by CSXI above as if fully set forth herein at length.

25.     In particular, CSXI points out that it did not provide any rail transportation services in the Southern District of New York, and under 49 U.S.C. § 10709 it is not subject to the Carmack Amendment, and it is only subject to any liabilities assumed in its contract with CSXT, and therefore plaintiff may not recover against CSXT.

26.     If it cannot be determined where the loss occurred, the loss is presumed to have occurred in the possession of the last carrier, and CSXT is not the last carrier.

WHEREFORE, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed together with costs and disbursements of this action, and for such other and further relief as to this Court may deem just and proper.

Dated:  New York, New York
        June 6, 2008

Respectfully submitted,

De ORCHIS & PARTNERS, LLP
Attorneys for Defendants
CSX Intermodal, Inc., and
CSX Transportation, Inc.
61 Broadway
26th Floor
New York, N.Y. 10006
Tel: 212-344-4700
Fax: 212-422-5299
Our File: 8008-124

By: _____
       William E. Lakis, Esq. (WL-9355)

OF COUNSEL:
DeOrchis, Hillenbrand & O'Brien, LLP
By:_____ s/ Hyman Hillenbrand_____
    Hyman Hillenbrand (HH-2869)
     8751 West Broward Blvd., Suite 203
    Fort Lauderdale, FL 33324
    Tel. (954) 652-0100
    Fax. (954) 652-0103

# EXHIBIT A

Issued: January 1, 2007
Effective: January 1, 2007

# CSX

# INTERMODAL

## SERVICE DIRECTORY No. 1

### Covering
**Contractual Terms for Trailer and Container-On-Flat Car and Other
Transportation Services
Arranged or Provided by CSX Intermodal, Inc.**

**Notice:**
This Directory's services and terms may be changed without
notice. Shippers are advised that the services and terms in
effect in this Directory on the date of shipment govern, and
therefore are advised to obtain the version of this Directory in
effect on the date of the Shipment.

**This Directory is issued by, and current editions
and supplements can be obtained from:**

**Director Commercial Administration
CSX Intermodal, Inc.
301 West Bay Street, 20th Floor,
Jacksonville, FL 32202
(904) 633-1133**

**Current copies can also be obtained at our web site
http:www.csxi.com/content/dsp serdir1.pdf**

Issued: January 1, 2007
Effective: January 1, 2007

## CSX INTERMODAL
## SERVICE DIRECTORY NO. 1
### SECTION 1- GENERAL SERVICES

Plan 605 or Service Code 60 - Door at origin, door at destination. Shipper Vehicle.

Plan 610 or Service Code 22 - Door at origin, ramp at destination. Carrier Vehicle.

Plan 615 or Service Code 62 - Door at origin, ramp at destination. Shipper Vehicle.

Plan 620 or Service Code 27 - Ramp at origin, door at destination. Carrier Vehicle.

Plan 625 or Service Code 67 - Ramp at origin, door at destination. Shipper Vehicle.

### Plan 800 or Service Code 85

Rail transportation of a loaded Shipper Vehicle from the Terminal at origin to the Terminal at destination where the Shipment has had/will have an immediate prior or subsequent movement via water transport in international commerce without transfer of Cargo. Shipper is responsible for pick-up and delivery beyond the Terminal.

### Plan 810 or Service Code 85 with 42 211 25 or 42 211 30

Rail transportation of an empty Shipper Vehicle from the Terminal at origin to the Terminal at destination having an immediate prior or subsequent loaded movement via rail in conjunction with water transport in international commerce. Shipper is responsible for pick-up and delivery beyond the Terminal.

### ITEM 70. TRANSIT TIME

CSXI will provide service schedules to Shipper if requested and if available. Schedules are offered solely for reference. Neither CSXI nor its Underlying Carriers or contractors guarantee interim layovers or final delivery of a Shipment at or by any particular date or time. CSXI, its Underlying Carriers and contractors are not responsible for costs or damages of any nature due to delay.

### ITEM 80. SPECIAL HANDLING (PROTECTIVE SERVICE & TARPAULINS)

Prior arrangements must be made by and at the expense of the Shipper where a Shipment's weight, Vehicle dimension requirements, or dangerous characteristics require special permits, bonds, escorts or other handling. By tendering a Shipment for transportation hereunder, Shipper warrants that it has obtained or provided for all required permits, bonds, escorts or other special handling and agrees to hold CSXI and its Underlying Carriers harmless from any liability resulting from Shipper's failure to comply with any such requirements.

Shipper is responsible for providing or arranging for the provision of any tarpaulins, specialized equipment, or protective services needed to protect a Shipment against heat, cold, the elements in general, or otherwise. Neither CSXI or its Underlying Carriers or contractors shall have any responsibility with respect thereto, or for loss or damage resulting therefrom, except to the extent provided for in an SPQ or other CSXI Contract with the Shipper.

### ITEM 90. CSXI LIABILITY FOR CARGO CLAIMS

As a service provided by CSXI, all claims for Cargo loss or damage associated with services arranged or provided by CSXI must be filed with CSXI. CSXI will process and pay properly filed Cargo claims filed in accordance with the contractual liability established in this Directory.

a) LIMIT OF LIABILITY

CSXI's liability for loss or damage to Cargo is defined and limited as follows:

Issued: January 1, 2007
Effective: January 1, 2007

## CSX INTERMODAL
### SERVICE DIRECTORY NO. 1
#### SECTION I- GENERAL SERVICES

i.       In those instances where loss or damage arises while a Shipment is in the possession of a rail carrier engaged by CSXI to perform services with respect to that Shipment, the liability assumed by CSXI to its Shipper shall be the same as the contractual liability undertaken by the rail carrier transporting the Shipment, subject to the limits set forth in Item 90(a) (v) – (vii) to the extent that those limits are more restrictive than the contractual liability.  To the extent the rail carrier's liability for the Shipment is defined or limited in its contract with CSXI, CSXI's liability to Shipper shall be similarly defined or limited.

ii.      In those instances where the loss or damage arises while a Shipment is at a CSXI Terminal, CSXI shall be responsible to the extent, on a comparative basis, the loss or damage is caused by the negligence of CSXI or its Underlying Carriers or contractors and subject to the limits set forth in Item 90(a) (iv) – (vii) below.

iii.     In those instances where loss or damage arises while a shipment is in the possession of CSXI's Trucking Operations Division or a Contract Motor Carrier, CSXI shall be responsible to the extent, on a comparative basis, the loss or damage is caused by the negligence of CSXI or its Contract Motor Carrier and subject to the limits set forth in Item 90(a) (iv) – (vii) below.

iv.      CSXI's liability as defined in (ii) and (iii) above shall be subject to a maximum of $1,250.00 per package. A package shall consist of a carton, box, crate, bag, or other integral shipping unit which contains the Cargo transported and which is used for protecting, handling and loading of such cargo. If one or more smaller packages are contained in one or more larger packages, the largest package shall be the package for the purposes of this Item 90. Where individual packages are loaded onto a pallet to constitute a shipping unit, the limitation of liability shall apply to each package on the pallet.

v.       No claim for $250.00 or less of Cargo loss or damage will be made by Shipper or accepted or paid by CSXI, and Shipper hereby waives any and all recovery, remedies and/or rights with respect to such claims.

vi.      In no event shall CSXI's total liability for Cargo loss or damage with respect to a Shipment exceed the lesser of Shipper's liability (if any) to others for the Cargo, or $250,000, nor shall CSXI be responsible for any special, consequential, indirect or punitive damages, interest or attorney's fees.

vii.     Except as stated in this Item 90, CSXI shall have no further responsibility to Shipper, Consignee, the beneficial owner, or any other person or entity with respect to loss or damage to Cargo.

b)  NOTICE AND INVESTIGATION

In the unlikely event that a Shipment arrives at destination with damaged or missing Cargo, Shipper shall notify CSXI in writing within 24 hours of delivery by facsimile sent to: (904) 279-6392 advising CSXI of the nature and extent of the damage or shortage. Prompt notification is required so that CSXI can arrange for an inspection of the Shipment if, in its sole discretion, doing so is warranted. The failure to promptly notify CSXI, as prescribed herein, shall constitute an unconditional release by Shipper of any responsibility on the part of CSXI to process or pay a claim relating to the Shipment. At CSXI's request, Shipper shall preserve and make available for inspection all damaged Cargo and all Cargo received in good condition, all packaging, material, dunnage, blocking, bracing, and security devices to assist the inspector in determining the cause of the damage or shortage.

c)  MITIGATION OF DAMAGES

Shipper shall be required to accept delivery of a Shipment so long as any part of it is not damaged and/or the Shipment is not totally worthless. It shall be the duty of the Shipper to preserve the value of that part of a Shipment received in allegedly damaged condition.

Issued: January 1, 2007
Effective: January 1, 2007

## CSX INTERMODAL
## SERVICE DIRECTORY NO. 1
### SECTION I– GENERAL SERVICES

Shipper shall exercise all reasonable and good faith efforts to mitigate its damages. This includes Salvage. If the Shipper contends that it cannot Salvage damaged Cargo, then the Cargo shall be offered to CSXI for Salvage.

If Shipper prevents or refuses to sell or allow the sale of damaged Cargo, CSXI may deduct the market value of the damaged Cargo from the amount of the claim, and the Shipper shall be bound by such deduction.

d) FILING

All claims for damage to or loss of Cargo must be in writing and received by CSXI within eight months from the date of delivery of the Shipment. If the Shipment has not been delivered, then the claim must be filed within eight months of the time that the Shipment was scheduled for delivery. The eight month time limit is designed to enable CSXI sufficient time to refile and process its claim with its Underlying Carrier or other contractor, if applicable.

All claims relating to a Shipment shall be filed solely with CSXI (subject to the exception hereinafter described) and must be sent to Cargo Claims, CSX Intermodal, Inc., P.O. Box 44085, Jacksonville, Florida 32231, or sent by facsimile transmission to (904) 279-6394. The claim must contain the following information:

i.     Specific information identifying the Shipment, such as the shipping date, the shipping Vehicle number, the names of the Shipper and the Consignee, and the place of origin and destination of the Shipment.

ii.    A specific description of the Cargo.

iii.   In the case of shortage, records proving the amount of Cargo loaded within the Container or Trailer, the amount of Cargo unloaded from the Container or Trailer at destination, including the seal number applied at origin, the seal number affixed at destination, and whether the seal at destination was intact upon delivery.

iv.    If a delivery receipt was executed for the Shipment, a copy of the delivery receipt should be sent with the claim.

v.     In case of damage, records including photographs, if available, pertaining to the condition of the Cargo at origin and destination, and evidence describing the packaging and securement within the Vehicle.

vi.    Particularized evidence of the amount of loss, such as the original or certified copies of any invoices and repair bills, as well as any evidence relating to the disposition of damaged Cargo or Salvage.

vii.   A copy of the SPQ or other CSXI Contract pertaining to the transportation of the Shipment, if any, the freight bill, and any other pertinent documents.

CSXI will, within fifteen (15) days of receipt of the claim, acknowledge its receipt and will, within ninety (90) days of receipt of the claim, notify Shipper of its conclusions regarding the claim. It is the good faith intention of CSXI to reach a conclusion with respect to every claim within one hundred and twenty (120) days of receipt of the claim.

If Shipper has not filed a claim in the manner required by this Directory within eight (8) months after delivery of any Shipment or eight (8) months after the time that the Shipment was scheduled for delivery, CSXI's obligation to process and, where appropriate, pay Cargo claims, shall be extinguished and CSXI shall be released from any liability therefor. After the expiration of the eight month period, Shipper may proceed by filing a written claim directly with CSXI's Underlying Carriers, but CSXI makes no representations

Issued: January 1, 2007
Effective: January 1, 2007

**CSX INTERMODAL**
**SERVICE DIRECTORY NO. 1**

| SECTION 1- GENERAL SERVICES |
| --- |

regarding, and bears no responsibility for, the timeliness or sufficiency of any such filing, nor for the payment of the claim.

b)  MEDIATION/LITIGATION

If Shipper disputes the declination by CSXI of all or any part of a claim by Shipper, Shipper and CSXI agree, prior to commencement of any legal proceedings by Shipper in furtherance of the claim, to submit the claim to mediation before a recognized mediator to be jointly selected by Shipper and CSXI. The mediation shall be held within thirty (30) days of notification from Shipper to CSXI of the need to mediate the dispute. The mediation will be conducted in Jacksonville, Florida or another location mutually agreed to by CSXI and Shipper. Each party will bear its own costs of mediation and the costs of the mediator will be split between them.

If CSXI and Shipper are unable to resolve the dispute through mediation, Shipper may file legal proceedings against CSXI so long as Shipper does so within six (6) months of receiving notice of the full or partial declination from CSXI. If suit is not instituted within that time period, then the liability of CSXI, its Underlying Carriers and other contractors (if any) shall be extinguished without qualification.

Any suit filed against CSXI must be filed either in Jacksonville, Florida; the United States point of origin where CSXI arranged for transportation to commence; or the United States destination where the transportation arranged by CSXI terminated.

c)  BURDEN OF PROOF

In any legal proceedings filed against CSXI with respect to a Cargo loss or damage claim, Shipper must prove, in addition to all other elements of its claim as defined in this Item 90, that the Cargo was: in good condition, properly prepared for transportation, appropriately packaged, loaded, blocked and braced within the Vehicle pursuant to the applicable AAR guidelines and all other relevant rules and regulations at the time that the Shipment was tendered by the Shipper or Interchanged to CSXI or its Underlying Carrier or contractor, and that the Shipment was damaged during the course of the service arranged or provided by CSXI. The failure of the Shipper to establish the foregoing shall result in a conclusive presumption that the Shipment was not damaged during transportation services arranged or provided by CSXI.

d)  DEFENSES

CSXI shall not be liable for any damages if the loss arose by reason of an act or default of the Shipper, Consignee, beneficial owner, or any other person or entity having an interest the Cargo; an inherent vice or defect in the Cargo; an act of God; an act of the public enemy or governmental authority; riots, strikes or insurrection.

Examples of a typical act or default of the Shipper actions would be: improper packaging, improper loading of the Vehicle in violation of the AAR Rules, improper shipping instructions, improper delivery instructions and failure to purchase protective service.

Examples of an inherent vice or defect in the Cargo are the rusting of metals, the swelling of wood caused by humidity, moisture or condensation, the deterioration of perishable products over the normal life cycle or span of those products, and damages caused by heat or cold when protective service is not purchased.

Issued: January 1, 2007
Effective: January 1, 2007

## CSX INTERMODAL
### SERVICE DIRECTORY NO. 1

### SECTION I– GENERAL SERVICES

Examples of an act of God are damages caused by, but not limited to: severe weather conditions such as tornadoes, hurricanes, floods, cold weather, hot weather, snow storms; earthquakes; and heavy rains flooding roadways. With respect to the act of God defense, weather related phenomena do not have to be unusual or severe, only that their advent caused or precipitated the damage to the subject shipment.

Examples of actions by governmental authority include, but are not limited to: the closure of roads due to vehicular accident, re-routing, detour, or repairs of roads; police action closing a particular area to vehicle traffic; governmental quarantines or embargoes; congestion or delay at government operated port facilities; cross border traffic delay caused by governmental authority; and United States Customs Inspection Requirements;

e) DAMAGES

The computation of damages for loss or damage to Cargo shall be the actual invoice value of the Cargo at the time and point of origin, or the cost of repairs, whichever is less, minus Salvage, subject to the limits set forth in Item 90(a).

The actual damage to each individual package subject to the package limitation set forth in Item 90(a) (iv) shall be aggregated in order to compute the total loss. As illustration, if there are 100 packages in a Shipment and 14 packages are damaged, each package shall have a limited liability of $1,250. If five of the packages have an invoice value of $300, the maximum amount recoverable for those five packages will be $300 times five packages or $1,500.00. If in two of the packages the Cargo is repairable at a cost of $150 per package or only damaged in that amount, the maximum recoverable damages are $150 times two or $300.00. If in the remaining seven packages the Cargo has an invoice value of $5,000 per package and the contents are totally destroyed, then CSXI shall be responsible for $1,250 times five packages or a total of $6,250.00.

f) INDEMNITY

Shipper will indemnify and hold harmless CSXI, its affiliates, Underlying Carriers and contractors and their respective directors, officers, employees and agents from and against any claim, lawsuit, loss, cost, damage or expense arising from or related to Cargo loss or damage other than claims filed in accordance with this Item 90 and subject to its terms and limitations.

### ITEM 100. LOADING AND UNLOADING RESPONSIBILITY OF SHIPPER

Shipper is responsible for the proper loading and unloading of Cargo within and from the Vehicle, and for all associated costs. Shipper shall cause all Cargo to be packaged, loaded, blocked and braced within the Vehicle in a manner to prevent shifting during Intermodal Service and which prevents damage to the Cargo and Vehicle while in Intermodal Service. Neither CSXI nor its Underlying Carriers and contractors shall have any responsibility or liability for damage to a Vehicle or Cargo due to packaging, loading, unloading, blocking or bracing of the Cargo within a Vehicle. The presence during or participation in loading or unloading of a Vehicle by a CSXI employee or agent, or that of one of its Underlying Carriers or contractors, shall not in any way change or lessen Shipper's responsibility with respect thereto.

The Intermodal Loading Guide for Products in Closed Trailers or Containers (AAR Pamphlet 45) and various other publications of the Association of American Railroads provide guidance on appropriate loading, blocking, and bracing techniques. Many of CSXI's Underlying Carriers and contractors have guidelines of their own on the subject. Where hazardous materials are involved, the packaging, loading, unloading, blocking and bracing of Cargo must comply with Tariff BOE 6000 and any other governmental

# EXHIBIT B



## EXEMPT RAIL SERVICES CONTRACT BETWEEN
## CSX TRANSPORTATION, INC. AND CSX INTERMODAL, INC.

**THIS AGREEMENT** made as of January 1st, 1994 herein incorporates, supersedes and replaces all prior existing agreements, whether written or oral, between CSX Transportation, Inc. and CSX Intermodal, Inc. for contract liability terms for rail services provided by CSX Transportation, Inc.

**WHEREAS** CSX Transportation, Inc. is a railroad duly licensed by the Interstate Commerce Commission to provide interstate rail services in the United States of America, and whereas certain amendments to the Interstate Commerce Act provide authority for CSX Transportation to provide contract rail transportation services with its customers, and

**WHEREAS** CSX Intermodal, Inc. is a shipper's agent arranging ramp-to-ramp rail transportation of trailer or container on flat car services (COFC/TOFC), and

**WHEREAS** CSX Intermodal, Inc. wishes to purchase blocks of rail transportation services for rates agreed to between the parties and amended from time to time which rates may be effected by an Appendix to this Agreement or by separate Supplemental Agreement as needed.

**NOW** therefore, in consideration for the mutual promises the parties agree as follows:

1.     CSX Transportation, Inc. will provide all such rail services as a contract carrier. CSX Transportation, Inc.'s responsibility shall commence when a trailer or container is delivered to CSX Transportation, Inc., and shall cease when CSX Transportation, Inc. delivers the container or trailer to CSX Intermodal, Inc. During the period of time of responsibility, CSX Transportation shall be responsible solely for loss or damage to the trailer or container owned by CSX Intermodal, Inc. or leased or tendered to them from others, caused to the trailer or container in an accident or derailment

Page 1 of 4

in accordance with the depreciation schedule for such vehicles set forth by the Association of American Railroads. CSX Transportation, Inc.'s responsibility for cargo loss or damage shall be solely for those shipments damaged in a derailment, or an accident while the container or trailer and cargo is in the possession of CSX Transportation, Inc. The parties agree that CSX Transportation, Inc. shall not be responsible for loss or damage to cargo caused by delay, caused by act or default of the shipper, inherent vice, Act of God, act of the public enemy, riots or strikes. Further CSX Transportation will not be responsible for any defects in the container or trailer, and will not be responsible to protect the cargo against damage caused by heat or cold. In addition, any limitation of liability in the contract between CSX Intermodal, Inc. and its customer shall also limit CSX Transportation, Inc.'s liability.

2.      Pursuant to the provisions of the Interstate Commerce Act, CSX Transportation, Inc. hereby offers CSX Intermodal, Inc. the opportunity to purchase for its customers Carmack Amendment liability for all transportation services purchased on their behalf. If any customer of CSX Intermodal, Inc. purchases Carmack Amendment liability pursuant to the terms of their Intermodal Service Directory, and CSX Intermodal, Inc. notifies CSX Transportation, Inc. prior to shipment, in writing, of this fact, and agrees to pay a hundred dollars in additional freight rate, CSX Transportation, Inc. will provide Carmack Amendment liability consistent with this Agreement, the provisions of the Carmack Amendment as contained in the then Interstate Commerce Act, and CSX Intermodal Service Directory.

3.      The parties agree that this contract may not be assigned to anyone without the express written consent of the other. It is the express intention of the parties that the provisions of this Agreement do not inure to the benefit of third parties. The only party entitled to file a written claim for loss or damage to any shipment transported by CSX Transportation, Inc. is CSX Intermodal, Inc. Claims for loss or damage must be filed in writing, unless waived or extended in writing, within ten

(10) months of delivery of the shipment to the destination rail ramp. No lawsuit may be instituted against CSX Transportation, Inc.

4.    CSX Intermodal, Inc. hereby warrants that it will provide all notices required by any Federal or State Statute or Regulation for the transportation of hazardous or dangerous materials.

5.    This contract shall be interpreted according to the laws of the State of Florida. If any dispute arises between the parties to this contract with respect to the interpretation of the contract, or the responsibility of CSX Transportation, Inc. for the rail transportation services provided hereunder, the parties agree to give thirty (30) days written notice to the other party of a dispute, and within the next thirty (30) days, they will select a single arbitrator and will proceed to arbitration within the following thirty (30) days. The opinion of the arbitrator in this binding arbitration will be final. The parties agree that the prevailing party in the arbitration will be reimbursed by the losing party for the cost of arbitration. The arbitration shall be held in Jacksonville, Florida. If the parties cannot agree on an arbitrator, the American Arbitration Association will provide the arbitrator, and the arbitration will be conducted in accordance with the Rules of the American Arbitration Association. The provision of the freight claim Rules of the Association of American Railroads shall apply with respect to handling cargo claims, and adjusting said cargo claims between the parties.

6.    CSX Intermodal, Inc. shall pay CSX Transportation, Inc. for transportation charges incurred in accordance with the Appendix or the agreements then in effect on the date the service is rendered within thirty (30) days.

7.    This Agreement shall remain in effect until canceled by either party on three days written notice. This Agreement may be amended in writing signed by both parties.

Therefore, CSX Transportation, Inc. and CSX Intermodal, Inc. have caused this Agreement to be executed as of the date below by their representatives to memorialize their agreement, effective as of the day and year first written above.

CSX Transportation, Inc.:

By: _____

Name: _THOMAS J FARMER LLC___

Title: _AVP MARKETING_

Date: _5-17-2000_

CSX Intermodal, Inc.:

By: _____

Name: _Alan Peck_

Title: _VP- Pricing & Contracts_

Date: _5/10/00_